UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT W. SCHEFFY, JR.;<br>ROBERT W. SCHEFFY, III; and<br>SCHEFFY CONSTRUCTION, LLC;<br>     Plaintiffs | CIVIL DOCKET NO.: |
| | JUDGE: |
| VERSUS | |
| JOEL LYONS; CHANDELIER DEVELOPMENT<br>INC.; CHANDELIER DEVELOPMENT<br>NOLA LLC; MARK LARIMORE;<br>and RAM ENTERPRISES, INC. D/B/A<br>RAM FLOORS<br>     Defendants | MAGISTRATE JUDGE: |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## **COMPLAINT**

Plaintiffs, Robert W. Scheffy, Jr.; Robert W. Scheffy III; and Scheffy Construction, LLC; for their complaint against Defendants, Joel Lyons; Chandelier Development Inc.; Chandelier Development NOLA LLC; Mark Larimore; and RAM Enterprises, Inc. d/b/a RAM Floors aver as follows:

### PARTIES, JURISDICTION, & VENUE

1.  Plaintiffs herein are:

    a.  Robert W. Scheffy, Jr. ("Rob, Jr."), a natural person of the full age of majority, resident of and domiciled in Baton Rouge, Louisiana;

    b.  Robert W. Scheffy III ("Robert III"), a natural person of the full age of majority, resident of and domiciled in Baton Rouge, Louisiana; and

    c. Scheffy Construction, LLC ("Scheffy Construction"), a Louisiana limited liability company with its principal place of business in Baton Rouge, Louisiana, and whose sole member is Robert Scheffy III.

2. Defendants herein are:

    a. Joel Lyons ("Lyons"), a natural person of the full age of majority, who, upon information and belief, is a resident of and domiciled in Nashville, Tennessee;

    b. Chandelier Development Inc. ("Chandelier TN"), a Tennessee corporation with its principal place of business in Nashville, Tennessee, and whose sole member is Joel Lyons;

    c. Chandelier Development NOLA LLC ("Chandelier NOLA"), a Louisiana limited liability company with its principal place of business in Nashville, Tennessee, and whose sole member is Joel Lyons;

    d. Mark Larimore ("Larimore"), a natural person of the full age of majority, who upon information and belief, is a resident of and domiciled in Montgomery, Alabama; and

    e. RAM Enterprises, Inc. d/b/a RAM Floors ("RAM Floors"), an Alabama corporation with its principal place of business in Montgomery, Alabama, and, upon information and belief, whose sole member is Mark Larimore.

3. Plaintiffs and Defendants are hereinafter collectively referred to as the "Parties."

4. This Court has original jurisdiction over this civil action pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. §1331 based upon the civil Racketeer Influenced and Corrupt Organization Act ("RICO") claims brought herein, which arise under the laws of the United States.

5.      This Court has supplemental jurisdiction over the non-federal claims asserted herein under 28 U.S.C. §1367, as the non-federal claims are reasonably related to the federal claims and arise out of the same transactions and occurrences such that they form part of the same case or controversy.

6.      The Court has jurisdiction over each Defendant named herein because (1) the Defendant either on its own or through its agents, at the time of the commission of the acts alleged herein, transacted business in the State of Louisiana, and the cause of action that is the subject of this Complaint arises out of business transactions in the State of Louisiana, including specific acts within this district, including without limitation, the abuse of money that was held in this district; (2) the Defendant has sufficient minimum contacts with this district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice; and/or (3) the Defendant subjected itself to the jurisdiction of this district by virtue of "Governing Law, Venue" clause contained in the construction contract at issue herein.

7.      Venue is proper in this Court by virtue of the "Governing Law, Venue" clause contained in the construction contract at issue herein. Venue is also proper in this Court because a substantial portion of the transactions and damages sustained were committed and/or occurred in this district. Defendants have received substantial compensation and improper benefits in this district by doing business here and engaging in numerous activities that had (and continue to have) an effect in this district, or under 18 U.S.C. §1965(b) ends of justice require that other parties residing in any other district be brought before the Court.

## TRANSACTION & OCCURRENCE OF EVENTS

8.  Plaintiffs were defrauded by Defendants of over **Seven Hundred Thousand Dollars ($700,000.00)**.

9.  Robert W. Scheffy, Jr. ("Rob, Jr."), Robert W. Scheffy III ("Robert III"), and/or Scheffy Construction, LLC ("Scheffy Construction") (collectively referred to as "Scheffy") were fraudulently induced by Joel Lyons ("Lyons") and Mark Larimore ("Larimore") to invest in a business deal wherein the group would purchase, renovate, and sell properties for profit (the "Deal").

10. The Deal was initially presented to Scheffy as purchasing two properties in the French Quarter in New Orleans, Louisiana, which were across the street from each other at 625 Esplanade Avenue and 628 Esplanade Avenue (collectively referred to as the "Properties") into condominiums.

11. However, Lyons and Larimore continuously morphed and changed the Deal and involved the companies they owned:  Chandelier Development Inc. ("Chandelier TN"), and Chandelier Development NOLA LLC ("Chandelier NOLA), which were owned by Lyons, and RAM Enterprises, Inc ("RAM Floors"), which was owned by Larimore.

12. Lyons, Chandelier TN, Chandelier NOLA, Larimore, and RAM Floors are hereinafter collectively referred to as the "Enterprise."

13. The Enterprise was part of the scheme to defraud Scheffy.

**The Deal**

14.    An email correspondence from the Enterprise on July 8, 2016, laid out the Deal to

Scheffy, as follows:

> "If we feel like the best setup is the following, please let me know your thoughts and
> we can move forward to ironing this out.
>
> 1.   [The Enterprise] sets up LLC entity and Articles that purchases the property and
>      obtains the financing from bank would also execute Operating Agreement for
>      the LLC.
> 2.   This new LLC entity has a contract and warranty agreement with Scheffy
>      Construction who performs the construction.  This would also include an
>      agreement for profit share on the performance of the project.
> 3.   Investor Contributions – [Rob, Jr.] & I would have a separate agreement with
>      each investor and agreement on return on their investments.  This interest
>      incurred would be a project cost and not tied to the performance of the project."

15.    The Enterprise provided an estimate of profits to be made on the Deal as an attempt to

induce Scheffy to agree to the Deal.  This estimate included a combined amount of

between $2.8 million and $3.2 million for both Properties.

16.    Initially, Rob, Jr. was not involved in the Deal.

17.    However, Robert III agreed to provide construction services on both Properties as

suggested by the Enterprise.  Specifically, Robert III would provide construction

services to renovate and flip the Properties through his company, Scheffy Construction,

along with property management services. In return, Robert III would receive 25% of

the profits and revenue.

18.    In November 2016, the Enterprise circulated an Operating Agreement which included

an addendum entitled "Significant Project Agreement" wherein it states that the Deal

entails purchasing the Properties; renovating the Properties; and subsequently selling

the Properties.  This Operating Agreement further stated that Scheffy Construction

would be responsible for all construction on the Properties and that Robert III would get 27.5% of the net profits.

19.    On February 6, 2017, Scheffy Construction executed a contract with Chandelier NOLA on 628 Esplanade Avenue wherein Robert III, as a partner in the Deal, reduced Scheffy Construction's fee on the contract from 15% to 12% in order to reduce costs for the Enterprise.

20.    On August 11, 2017, Lyons sent an email to Robert III and Larimore stating that while cash flow is currently good, they will soon need to obtain "additional capital sources."

21.    On December 19, 2017, the Enterprise reached back out to Rob, Jr. to specifically discuss a $125,000.00 investment in the Deal.

22.    On December 21, 2017, Rob, Jr. responded back to the Enterprise and discussed the contribution. The Enterprise agreed that documentation on the Deal would be prepared as Rob, Jr. requested, but such documentation was never provided despite repeated requests.

23.    On December 22, 2017, Rob, Jr. provided Check no. 9213 written out to Chandelier NOLA in the amount of $125,000.00 to the Enterprise.

24.    Therefore, the Deal included Rob, Jr. providing $125,000 in capital to fund the renovation of the Properties. In return, Rob, Jr. would receive 25% of the profits and revenue or, at the very least, the payment back of his contribution with interest.

25.    Detailed below is a timeline of the scheme for each property:

**625 Esplanade Avenue, New Orleans, LA**

26.    On or about August 19, 2016, Chandelier NOLA purchased the property located at 625 Esplanade Avenue in New Orleans, Louisiana ("625 Esplanade") for $300,000.

27.    625 Esplanade was purchased with the intent of having Scheffy Construction renovate and/or construct condominiums in the buildings for re-sale and profit. Instead, on or about December 17, 2019, prior to any renovation or construction, Chandelier NOLA sold 625 Esplanade to Empire Burlesque, LLC, for $500,000.

28.    Prior to the sale of 625 Esplanade, the Parties entered into a sharing agreement as to the $200,000 profits from the sale.

29.    The profits were to be split amongst the Parties as follows:

    a.  Robert III/Scheffy Construction:        $50,000

    b.  Rob, Jr.:                                          $50,000

    c.  Lyons/Chandelier NOLA/Chandelier TN:    $50,000

    d.  Larimore/RAM Floors:                    $50,000

30.    The Enterprise failed to pay Scheffy the amounts owed under their agreement from the sale of 625 Esplanade.

### 628 Esplanade Avenue, New Orleans, LA

31.    On or about August 19, 2016, Chandelier NOLA purchased the property located at 628 Esplanade Avenue in New Orleans, Louisiana ("628 Esplanade") for $1,527,800.00.

32.    628 Esplanade was purchased with the intent of having Scheffy Construction renovate and/or construct condominiums in the buildings for re-sale and profit.

33.     Accordingly, on February 15, 2017, Scheffy Construction entered a contract ("Contract") with Chandelier NOLA for Scheffy Construction to renovate or construct four condominium units in 628 Esplanade ("Project").

34.    On or about September 14, 2018, Scheffy Construction submitted its Final Payment Application under the Contract to Chandelier NOLA and Lyons ("Final Pay App"). On or about December 19, 2018, the final inspection was complete.

35.    Rob, Jr. as a Louisiana licensed attorney, provided legal services to the Enterprise in connection with subdividing 628 Esplanade into condominiums.

36.    Robert III and/or Scheffy Construction also provided property management services to the Enterprise in an effort to prepare 628 Esplanade for development, construction, and maintenance.

37.    Robert III was the "boots on the ground" as the Defendants were all located out of State and relied on him to take care of everything to do with the Properties. This included but was not limited to ensuring regular pool maintenance, preparing the property for showings, coordinating repair of a roof leak, and performing other general management and maintenance services.

38.    On or about April 3, 2020, Scheffy Construction provided the Enterprise with a written demand for payment of the Final Pay App and property management services.

39.    Despite repeated additional demands, the Enterprise failed to pay Robert III and/or Scheffy Construction the amounts owed.

40.    Furthermore, after the Project was completed, the Enterprise did **not** sell 628 Esplanade, as promised.  Instead, in October 2019, the Enterprise leased out the four individual condominium units.

41.    Upon information and belief, the Enterprise continues to lease and gain rents from the four individual condominium units in 628 Esplanade in the amount of approximately $16,000-$18,000 a month.

42. Upon information and belief, the total rent collected to date is over $700,000. Scheffy is owed a combined 50% of the revenues or profits from the leases and has not been paid any portion thereof to date.

43. The Enterprise failed to sell 628 Esplanade as agreed, failed to pay Scheffy a share of the rents, and failed to provide any return whatsoever on Scheffy's investment.

### THE RICO SCHEME

44. The Enterprise fraudulently induced Scheffy to contribute money, legal services, property management services, and construction services to their scheme.

45. The Enterprise falsely and fraudulently represented to Scheffy in telephone calls, e-mail correspondence, and text messages that they were investing in flipping properties and would obtain a return for their monetary and service contributions to the Deal.

46. These false representations were made on a weekly and sometimes daily basis.

47. Any time Scheffy would press the Enterprise for paperwork to evidence the agreements, Scheffy would be ignored, and any concerns were brushed off. When a profit would arise from the sale or lease of the Properties, the Enterprise would find reasons to delay and outright avoid paying distributions.

48. As discussed, the Enterprise provided an Operating Agreement for Chandelier NOLA, which included Robert III as a member in the early days of the Deal prior to Rob, Jr.'s involvement, but this document was never executed.

49. After his own contribution, Rob, Jr. again sought documentation of the Deal. However, when Scheffy did not immediately execute an Operating Agreement from the Enterprise, and instead provided comments and changes to the Operating Agreement,

the Enterprise stopped responding to Scheffy's requests regarding the Operating Agreement.

50.  Every promise, understanding, and agreement between Scheffy and the Enterprise was broken, obfuscated, or breached. The Enterprise continually changed the Deal so that they would reap the benefits, and Scheffy would be left out of the rewards while often shouldering the costs.

51.  The Enterprise continued to make promise after promise over the telephone, in e-mail correspondence, and by text message related to the underlying nature of Deal. In all of these conversations, the Enterprise represented that various activities were underway on the Properties and that Scheffy would be part of any return or profits.

52.  Scheffy never received any return or profit from their contributions to the Deal.

## DEFENDANTS FAILURE TO PAY MONIES OWED

53.  The payments received by Robert III and/or Scheffy Construction for both Properties equals $1,040,646.29.

54.  The total cost of the work performed to date on 628 Esplanade by Robert III and/or Scheffy Construction is $1,281,288.35.

55.  Therefore, there is an outstanding balance to Robert III and/or Scheffy Construction of $240,642.00, plus interest as outlined below.

56.  Under Section 2.5 of the Contract, "Payments due and unpaid under the Contract Documents shall bear interest at the rate of twelve percent (12%) per annum from the date payment was due until paid."

57.  The Enterprise failed to pay Robert III and/or Scheffy Construction under the Contract for the construction services.

58.    The Enterprise further failed to pay Robert III $25,000 for property management services.

59.    The Enterprise further failed to either return an investment on the Properties (profits from the sale of 625 Esplanade in the amount of $100,000 and the lease incomes from 628 Esplanade in the amount of $350,000) to Scheffy and/or, in the alternative, pay back the $125,000 capital with interest.

60.    Nonetheless, the Enterprise continued to promise to Scheffy that they would be paid for their work and the investments until March 2021.

SUMMARY OF CLAIMS

61.    Scheffy alleges claims under the Racketeer Influenced and Corrupt Organizations (RICO) Act, as well as under state law for fraud, conspiracy, breach of contract and state RICO claims.

62.    Scheffy seeks at least seven hundred and fifteen dollars and six hundred and forty-two dollars ($715,642.00) taken by the Defendants, with other co-conspirators, plus compensation.

**Count I:  Civil RICO Claim Against All Defendants**

63.    Defendants, individually and in conspiracy with one another, violated RICO by engaging in (1) "racketeering activity", (2) conducted through a "pattern", (3) affecting an "enterprise", (4) impacting interstate commerce.

64.    At all relevant times, Plaintiffs and Defendants were "persons" for purposes of 18 U.S.C. § 1961(3) and § 1964(c).

65.    The enterprise at issue in this case, for purposes of 18 U.S.C. § 1962, is an association-in-fact of all unnamed co-conspirators and Defendants collectively referred to herein

as "the Enterprise." Under 18 U.S.C. § 1961(4) an enterprise need not be a specific legal entity but rather maybe "any union or group of individuals associated in fact although not a legal entity." While Defendants participated in the Enterprise and were a part of it, Defendants also have an existence separate and distinct from the Enterprise.

66.    The Enterprise engaged in activities which affect interstate commerce, including the solicitation and receipt of interstate financial transactions, which are transacted via wire transfer (mail or wire fraud). The Enterprise falsely and fraudulently represented purported facts to Scheffy to induce them to invest in the Deal and provide money and services to support the purchase, renovation, sale, and lease of the Properties. The Enterprise falsely and fraudulently concealed the true facts of the scheme and continued to conceal from Scheffy the true facts of the transaction as the transactions continued.

67.    Defendants were engaged in a conspiracy to defraud Scheffy and each of them are liable for the actions of the other as if they themselves had committed the acts. The conspiracy engaged in by these Defendants utilizing mail fraud (18 U.S.C. §1341) and wire fraud (18 U.S.C. §1343) by use of interstate emails, telephone or fax and by use of the wire transfer system of the Federal Reserve Bank of the United States.

68.    Scheffy was injured individually and in their business as a direct and proximate result of the foregoing violations of 18 U.S.C. § 1962(b) and 1962(d) and assert this civil RICO claim pursuant to 18 U.S.C. § 1964(c).

69.    As a result of the fraudulent acts, breaches of contract, and RICO violations committed by Defendants, Defendants are liable *in solido* to Plaintiffs in the amount of approximately seven hundred and fifteen dollars and six hundred and forty-two dollars ($715,642.00) in outstanding invoices, lost profits, lost opportunities, and other

damages, plus judicial interest from date of demand and all costs. Furthermore, pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold damages and the cost of the suit, including reasonable attorney's fees.

**Count II: Defendants' Violation of Louisiana Racketeering Act Against All Defendants**

70.   The foregoing allegations are incorporated in this Count.

71.   Defendants have engaged in a pattern of conduct undertaken for the purpose of inducing Scheffy and other persons, by means of untrue oral or written statements and/or other artifices and deceptions, to induce the investment of monies and services to allegedly purchase, renovate, sell, and/or lease the Properties for profit.

72.   For the reasons set forth hereinabove, Defendants have violated Louisiana Racketeering Act, La. Rev. Stat. § 15:1351, *et seq.* (the "LRA").

73.   Defendants have engaged in the foregoing course of conduct in violation of La. Rev. Stat. § 15:1353 in order to perpetuate and conceal their own past and ongoing misconduct, including the diversion of seven hundred and fifteen dollars and six hundred and forty-two dollars ($715,642.00) of Scheffy for the benefit of themselves and others, as well as similar acts of self-dealings at the expense of Scheffy in violation of Louisiana law.

74.   Through the aforesaid conduct, Defendants knowingly received proceeds derived, directly or indirectly, through a pattern of conduct constituting and/or involving violations of the LRA.

75.   At all relevant times, Plaintiffs and Defendants were "persons" within the meaning of the LRA.

76.    All of the foregoing acts separately constitute violations of La. Rev. Stat. § 14:67, and Defendants' conduct in engaging in multiple instances of racketeering activity pursuant to La. Rev. Stat. § 15:1352 in violation of La. Rev. Stat. § 15:1353.

77.    Scheffy was injured as a result of the aforesaid conduct of Defendants by, among other things, the loss of profit, income and revenues to which Scheffy is entitled; the loss of the use and benefit of funds expended to invest in allegedly the purchase, renovate, sell and/or lease the Properties for profit, the loss of good will, and future revenues and profits, business relationships and opportunities, and other damages, losses, and injuries, (including attorney's fees and court costs) of such nature and in such amounts as shall be demonstrated at trial.

78.    Pursuant to La. Rev. Statute § 15:1356(E), Plaintiff is entitled to recover three times the actual damages sustained as a result of the conduct of Defendants, together with their attorneys' fees and expenses incurred in the investigation and prosecution of these claims.

## Count III: Civil Conspiracy Against All Defendants

79.    The foregoing allegations are incorporated in this Count.

80.    Defendants, acting in concert with one another committed the intentional tort of fraud.

81.    Scheffy shows that Defendants made hundreds of misrepresentations of material fact with the specific intent to deceive Scheffy.

82.    Each Defendant is liable *in solido* for all damages caused by said act pursuant to La. Civ. Code art. 2324(a) because the Defendants conspired with one another to commit the intentional and willful fraud set forth above.

**Count IV: Breach of Contract with Scheffy Construction Against Chandelier NOLA**

83.     The foregoing allegations are incorporated in this Count.

84.     Chandelier NOLA entered into a Contract with and Scheffy Construction for the renovation and construction of 628 Esplanade.

85.     As more particularly described above, Chandelier NOLA was obligated to pay Scheffy Construction for the work performed by Scheffy Construction on the Project.

86.     Chandelier NOLA failed to pay Scheffy Construction the amount owed under the Contract for work performed by Scheffy Construction on the Project, in breach of its contract with Scheffy Construction.

87.     As a result of this breach of contract by Chandelier NOLA, Scheffy Construction suffered damages, which includes but is not limited to: monies owed for services, loss of revenue and profits, and attorneys' fees and costs incurred in connection with this litigation.

**Count V: Bad Faith Breach of Contract with Scheffy Construction
Against Chandelier NOLA**

88.     The foregoing allegations are incorporated in this Count.

89.     Every contract contains an implied covenant of good faith and fair dealing, and Louisiana law requires that "contracts must be performed in good faith." La. Civ. Code art. 1983.

90.     Chandelier NOLA purposefully and willfully breached its express and implied contractual obligations to Scheffy Construction by failing to pay monies owed to Scheffy Construction. Specifically, Chandelier NOLA participated in the Enterprise to defraud Scheffy Construction.

91.     By accepting Scheffy Construction's materials, equipment, and services under false

pretenses and with no intention of paying, Chandelier NOLA's breach of its Contract with Scheffy Construction was, and remains, in bad faith, with malice and intent within the meaning of La. Civ. Code art. 1997.

92.    Scheffy Construction is entitled to damages caused as a result of Chandelier NOLA's bad faith breach of contract including and all related costs and expenses, including attorney fees, as well as all other actual and consequential damages, whether or not foreseeable, to be proven at the trial of this matter.

**Count VI: Fraud in the Inducement of Contract Against All Defendants**

93.    The foregoing allegations are incorporated in this Count.

94.    Defendants represented to Scheffy that they would get a return on investment by providing money and services for the Deal. These representations were false and Defendants knew that they were false at the time that they made them. Scheffy has not received any return on investment.

95.    Defendants intentionally misrepresented and suppressed the truth in order to induce Scheffy to provide funds and services.

96.    Had Scheffy known that Defendants would withhold any profits and not comply with the terms of the Deal, Scheffy would not have invested with the Enterprise in the first place and would not have paid any monies or provided any services.

97.    Scheffy is entitled to a rescission of any and all contracts, the full return of its money plus legal interest from the dates of the payment, and damages and attorneys' fees pursuant to La. Civ. Code art. 1958.

**Count VII: Suit on Open Account Against Chandelier NOLA**

98.    The foregoing allegations are incorporated in this Count.

99.    Scheffy Construction maintains an "open account" for Chandelier NOLA for which the balance is past due in the amount of $240,642, plus interest.

100.    The account reflects amounts owed to Scheffy Construction for equipment, materials, labor, and/or services provided by Scheffy Construction on the Project pursuant to Scheffy Construction's Contract with Chandelier NOLA.

101.    Further, Robert III maintains an "open account" for Chandelier NOLA for which the balance is past due in the amount of $25,000. The account reflects amounts owed to Robert III for property management services.

102.    Scheffy Construction and Robert III made numerous written and verbal demands on Chandelier NOLA for payment of the open account.

103.    Chandelier NOLA failed to pay the open account within thirty days after Scheffy Construction and Robert III sent written demand for same.

104.    Accordingly, pursuant to La. Rev. Stat. § 9:2781, Chandelier NOLA owes Scheffy Construction and Robert III the balance of the open account, plus reasonable attorney's fees for the prosecution and collection of such account.

### Count VIII: Conversion Against All Defendants

105.    The foregoing allegations are incorporated in this Count.

106.    Scheffy provided certain monies and services to Defendants with the false understanding that Defendants would compensate them in return.

107.    Defendants wrongfully exercised or assumed authority and control over Scheffy's monies depriving Scheffy of possession, permanently, or for an indefinite time.

108.    Defendants then converted Scheffy's investment of money and services without making just payment therefore.

109. As a result of the conversion, Scheffy was damaged.

110. Scheffy is entitled to recover of and from Defendants the reasonable value of such investment, materials, equipment, labor, and services, together with legal interest and court costs, from the date of judicial demand.

## Count IX: Unjust Enrichment Against All Defendants

111. The foregoing allegations are incorporated in this Count.

112. Defendants retained the benefit of Scheffy's investment, materials, equipment, labor, and services without making just payment therefore.

113. Defendants were unjustly enriched and should not retain the benefits of such investment, materials, equipment, labor, and services without paying reasonable compensation.

114. Such investment, materials, equipment, labor, and services were provided to Defendants under circumstances in which Defendants knew or should have known that they were expected to pay for same.

115. Scheffy is entitled to recover of and from Defendants the reasonable value of such investment, materials, equipment, labor, and services, together with legal interest and court costs, from the date of judicial demand.

## Count X: Detrimental Reliance Against All Defendants

116. The foregoing allegations are incorporated in this Count.

117. Scheffy shows that they changed their position for the worse by providing Scheffy with Scheffy's investment, materials, equipment, labor, and services based on the false and fraudulent promises and misrepresentations of Defendants.

118.    Scheffy justifiably and reasonably relied upon Defendants' false and fraudulent promises and misrepresentations and Defendants knew or should have known that Scheffy would rely on them in taking such action.

119.    Scheffy was damaged as a result of their reliance upon Defendants' promises and representations, which were false and/or remain unfulfilled.

120.    Scheffy is entitled to recover of and from Defendants the reasonable value of such investment, materials, equipment, labor, and services, together with legal interest and court costs, from the date of judicial demand.

**Count XI: Single Business Enterprise Between Chandelier TN and Chandelier NOLA**

121.    The foregoing allegations are incorporated in this Count.

122.    Scheffy shows that Chandelier TN and Chandelier NOLA constitute a "single business enterprise" under Louisiana law.

123.    Upon information and belief, Chandelier TN and Chandelier NOLA have a common identity of ownership, common directors and officers, unified administrative control, common offices, commingled assets, common employees, centralized accounting, undocumented transfer of funds between entities, and excessive fragmentation.

124.    As such, Chandelier TN and Chandelier NOLA are solidarily liable to Scheffy for the debt and damages sued upon herein.

125.    Scheffy sues Chandelier TN and Chandelier NOLA for same.

**Count XII: Alter Ego(s) of Lyons**

126.    The foregoing allegations are incorporated in this Count.

127.    Scheffy shows that Chandelier TN and/or Chandelier NOLA are the alter egos of Lyons.

128.    Lyons used his status as the sole member and manager of Chandelier TN and alleged sole member and manager Chandelier NOLA to commit fraud against Scheffy, as previously described herein.

129.    Chandelier TN and Chandelier NOLA are the instrumentalities employed by Lyons to attempt to ensure personal insulation from the debts, damages, and deceitful acts of Lyons against Scheffy.

130.    As such, Lyons is liable to Scheffy for the debts and damages sued upon herein.

131.    Scheffy sues Lyons for same.

## Count XIII: In The Alternative, Breach of Contract with Rob, Jr.
## Against Chandelier NOLA

132.    The foregoing allegations are incorporated in this Count.

133.    Chandelier NOLA entered into a Contract with and Rob, Jr. for the loan of $125,000.00 with an interest rate of 12 %, with interest delayed 12 months from tender.

134.    As more particularly described above, Chandelier NOLA was obligated to pay Rob, Jr. for the principal amount of $125,000.00 and interest accrued from December 19, 2018.

135.    Chandelier NOLA failed to pay Rob, Jr. the amount owed in breach of its contract.

136.    As a result of this breach of contract by Chandelier NOLA, Rob, Jr. suffered damages, which includes but is not limited to: loss of revenue and profits, loss of opportunity, and attorneys' fees and costs incurred in connection with this litigation.

### DEMAND FOR JURY TRIAL

137.    Scheffy demand trial by jury of all issues so triable.

WHEREFORE, after due proceedings herein, Plaintiffs pray that this, their Complaint in the captioned matter, be deemed good and sufficient, and upon due proceedings, that judgment be

had and rendered hereupon in favor of Plaintiffs and against Defendants, jointly, and *in solido*, as follows:

1. Awarding the full sum of $240,642, with interest, until paid in full for breach of contract with Scheffy Construction, LLC;

2. Awarding the full sum of $25,000, with interest, until paid in full for breach of contract with Robert W. Scheffy III for property management services;

3. Awarding the full sum of $50,000 in profits from the sale of 625 Esplanade Avenue, with interest, until paid in full to Robert W. Scheffy Jr;

4. Awarding the full sum of $50,000 in profits from the sale of 625 Esplanade Avenue, with interest, until paid in full to Robert W. Scheffy III;

5. Awarding Plaintiffs a share of the lease income on 628 Esplanade Avenue until such date the property is sold;

6. Awarding Plaintiffs the monetary damages caused by Defendants as shown at trial, including trebled actual damages, as authorized by law, lost profits, and lost opportunity;

7. Awarding Plaintiffs their attorneys' fees, costs, and expenses incurred in the pursuit and prosecution of this action;

8. Awarding Plaintiffs all pre and post judgment judicial interest, on all sums and amounts awarded herein; and

9. In the alternative, returning the full sum of $125,000.00, with interest, until paid in full for breach of contract with Robert W. Scheffy Jr;

10. Awarding Plaintiffs all other relief to which Plaintiffs are entitled at law or equity on the premises hereof.

**RESPECTFULLY SUBMITTED BY:**

/s/ John B. Dunlap III
John B. Dunlap III (La Bar No. 19431)
Alexis M. Breedlove (La Bar No. 30649)
Erin Fonacier (La Bar No. 33861)
**DUNLAP FIORE, LLC**
6700 Jefferson Highway, Building 2
Baton Rouge, LA 70806
Telephone: (225) 282-0660
Facsimile: (225) 282-0680
jdunlap@dunlapfiore.com
abreedlove@dunlapfiore.com
efonacier@dunlapfiore.com
*Attorneys for Robert W. Scheffy, Jr., Robert W.*
*Scheffy III, and Scheffy Construction, LLC*

**PLEASE ISSUE SUMMONS TO:**

Joel Lyons
404 Lynnwood Blvd.
Nashville, TN 37205-3435

Chandelier Development Inc.
Through its registered agent for service of process:
Joel Lyons
4840 Centennial Blvd., Ste 203
Nashville, TN 37209

Chandelier Development NOLA LLC
Through its registered agent for service of process:
Joel Lyons
8017 Jefferson Highway, Ste. C4
Baton Rouge, LA 70809

Mark Larimore
5671 Woodside Cir
Montgomery, AL 36117

RAM Enterprises, Inc. d/b/a RAM Floors
Through its registered agent for service of process:
Mark Larimore
1519 East Ann Street
Montgomery, AL 36107

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ROBERT W. SCHEFFY, JR.;                          CIVIL DOCKET NO.:
ROBERT W. SCHEFFY, III; and
SCHEFFY CONSTRUCTION, LLC;
    Plaintiffs

                                        JUDGE:

VERSUS

JOEL LYONS; CHANDELIER DEVELOPMENT
INC.; CHANDELIER DEVELOPMENT                      MAGISTRATE JUDGE:
NOLA LLC; MARK LARIMORE;
and RAM ENTERPRISES, INC. D/B/A
RAM FLOORS
    Defendants

*********************************************************************************

**VERIFICATION**

STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE
Before me, the undersigned authority personally came and appeared Robert W. Scheffy

III who being first duly sworn deposed:

That he is a plaintiff in the above and foregoing proceeding and he is the Manager of

Scheffy Construction, LLC, which is also a plaintiff, and that all of the information contained in

the complaint is true and correct to the best of his knowledge, information and belief.

_____
Robert W. Scheffy III

**SWORN TO AND SUBSCRIBED BEFORE ME**

This ___ day of _____ 2023.

_____
NOTARY PUBLIC
My Commission Expires: _Upon death_

OFFICIAL SEAL
**ERIN G. FONACIER**
BAR ROLL # 33861
STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE
My Commission is for Life

23

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ROBERT W. SCHEFFY, JR.;                          CIVIL DOCKET NO.:
ROBERT W. SCHEFFY, III; and
SCHEFFY CONSTRUCTION, LLC;
    Plaintiffs

                                                                    JUDGE:

VERSUS

JOEL LYONS; CHANDELIER DEVELOPMENT
INC.; CHANDELIER DEVELOPMENT                      MAGISTRATE JUDGE:
NOLA LLC; MARK LARIMORE;
and RAM ENTERPRISES, INC. D/B/A
RAM FLOORS
    Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## VERIFICATION

STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE
Before me, the undersigned authority personally came and appeared Robert W. Scheffy Jr

who being first duly sworn deposed:

That he is a plaintiff in the above and foregoing proceeding, and that all of the information

contained in the complaint is true and correct to the best of his knowledge, information and

belief.

_____
Robert W. Scheffy Jr

**SWORN TO AND SUBSCRIBED BEFORE ME**

This _1_ day of _February_ 2023.

_____
NOTARY PUBLIC
My Commission Expires: _upon death_

OFFICIAL SEAL
**ERIN G. FONACIER**
BAR ROLL # 33861
STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE
My Commission is for Life

24